And we will hear argument in Upper Deck Co. v. Federal Insurance. Good morning, Your Honors. My name is Gary Osborne. I'm appearing on behalf of Upper Deck, the appellant. If you'll please the Court, there are really two paths that the Court could follow here, the two lines of cases that are in conflict. The first line of cases originates out of the Gettys and Hogan decisions. I don't know why you can't speak up a little. I realize I haven't got the greatest hearing aids on here, but I've got fairly decent ones. And if the lawyers would speak up, I could hear much better. Well, I just don't want to blast you out of your chair, Your Honor, but if you want me to speak up louder, I will. Well, yeah, you can speak up louder. I can't hear you now. I'm fine. Okay. Your Honors, there are two paths the Court could take. There's the Hogan-Gettys line of cases, which defines accident to include unintended consequences of intentional acts. Or there's the Merced-Quann line of cases from the California Intermediary Appellate Courts, which defines accident to mean only unintended or unforeseen acts or events, and drops the unintended consequences portion of the definition that was adopted and employed and applied by the California Supreme Court in Hogan and in Gettys. Your Honors, I want to, in summary, I want to address three issues. One, why the Court should follow the line of cases in Hogan and Gettys rather than Merced. Two, why Upper Deck wins this appeal even if the Court were to adopt the rule and the definition of accident in Merced. And three, why there is clearly bodily injury alleged as a potential for a liability under the policy for a claim of bodily injury. Was that pled bodily injury? Was that pled in this case? Your Honor, what was pled in the case, yes, but it wasn't expressly labeled bodily injury. How was it labeled? What did you say? Well, it's not what we said. What the plaintiffs said in the case, remember, was a class action filed by Milberg Weiss on behalf of representative plaintiffs and on behalf of a whole class of represented plaintiffs who were similarly situated. But what is the assertion in that complaint that identifies a claim for bodily injury? Well, Your Honor, the complaint says that many of the persons who purchase Upper Deck's card packages search for valuable chase cards and search for valuable chase cards are children and teenagers who may spend up to several hundred dollars per month on the habit. That's in paragraph five of the complaint. Okay. Where's the bodily injury? Bodily injury is defined under Federal's policies as a disease, sickness, mental anguish, and mental injury. All right? When you're talking about Which of those four has been pled by the reference you just gave us? I think that the disease is disease, Your Honor, disease that you can infer from the allegations, the factual allegations in the complaint, that plaintiffs, either the representatives or the represented class members have suffered a disease, gambling addiction, have become addicted to gambling as a result of the chase card. The difficulty I have is, actually, I'd like to start at the end of your three points because I think that informs how you look at the first two points. Yes. Under California law, you look at the tender of defense at the time of tender. And we have this, I don't know, 30, 40, 50, 100-page complaint from Milberg Weiss, which time and again basically says, because it's a RICO claim, because they want to come under RICO, that they want, the plaintiffs have been injured in their business and or property. And the only statement, as I understand it, that you would hang bodily injury on is this statement in paragraph five that says, kids, teenagers, spend $700 on the habit. Is that right? There's that, Your Honor. There's also an allegation or, in paragraph 21, there's a statement that the plaintiffs want the court to determine whether Upperdeck's violations caused injury to the members of the plaintiff class. Okay. But the only injury that you can recover under RICO, correct, and that's pled, is the one that they pled as a business or property injury, correct? Well, Your Honor, Milberg Weiss is interested in getting this action as a RICO action. They're not interested in lining up, you know, potentially the tens or hundreds of represented plaintiffs in the class who have perhaps relatively minor, relatively difficult-to-prove bodily injuries consisting of a gambling addiction, mental injury, mental anguish. That's a different lawsuit. Yeah, exactly. I mean, you know, I think the difficulty I'm having, and this is where you need to get me over the hurdle, if you will, is under California law you're not led to have to speculate about all the possible kinds of allegations somebody could make. In other words, every lawsuit that is brought has potentially ten other little avenues that it could have followed. It's just that they didn't. That's what they brought the lawsuit on. So as I understand it, we look at the lawsuit at the time it was tendered. We look at the allegations. At this point, there's no extrinsic evidence, I think. There's just the complaint. True. So to agree with you, we would have to say that you would have to divine from these two paragraphs, 5 and 21, that somebody could bring a personal injury suit based on addiction, and therefore then it would we'd have to get into your coverage issues then that we'd have to be more specific. But is that essentially what we would have to decide? Your Honor, that is essentially it. When Upper Deck reads the complaint and reads those allegations, they think, you know, these plaintiffs could, if they chose to and if their lawyers chose to do it on their behalf, bring an allegation of bodily injury, maybe under the theory of negligence, and seek damages as a result of that based on those allegations. Maybe we're a little paranoid when we look at it, but that's what we see when we look at it. And then we follow that up with extrinsic evidence that defense counsel supplied to Federal, and I believe May of 1999. That extrinsic evidence is evidence that was produced by the plaintiff's lawyers in this underlying case. Okay. That's a question I have. Maybe you can enlighten me on California insurance law. You have the complaint. Then you have a couple years go by. Then there's another letter, another tender letter, correct? And then a rejection. Yes, Your Honor. There was another tender letter before another complaint. There were, remember, three complaints. Multiple. Right. Filed at different times. First was the Schwartz, and then several years later it was followed by Dumas and Chassett. Before the Dumas and Chassett complaints were filed and tendered to Federal, defense counsel for Upper Deck sent to Federal evidence that had been produced by plaintiffs in the underlying action. Those were the articles? Those were two studies, and there was a declaration by a plaintiff's expert named Chapin discussing, among other things, how children who buy these chase cards or chase these cards inserted into the packs become addicted or hooked on gambling and all the kinds of consequential problems they develop as a result of this gambling addiction. So when we see that extrinsic evidence, there are two ways the Court could go with this. I mean, one, you could say, okay, with this extrinsic evidence, it's still not sufficient. I guess you could say that. With this extrinsic evidence, now the duty to defend is triggered. Or with this extrinsic evidence, this just supports the potential for coverage that existed in the complaint. Can you clarify, then, the deposition testimony and other discovery materials that were submitted with the summary judgment motion? What's the timing? Was that only submitted on or before the summary judgment motion and not with that later tender letter? Your Honor, the opposition of Federal raises that issue in its opposition, and we saw that for the first time there. Historically, this is not in the record, but let me just step outside the record for a moment and just explain to you what happened. Well, I don't want to go outside the record. I guess I want to know, can I tell from looking at the underlying record what the timing is, and if so, where would I look? I mean, because we're not really permitted to look outside the record, unfortunately, at this point. Your Honor, I am not aware of any place in our briefs from the motion for summary judgment where we addressed precisely when the deposition testimony was supplied to Federal. But the expert and those articles or studies, those were part of the later tender. Not part of the later tender. They were before the tender of Dumas by a few months. I believe it was May of 1999 when those articles and the declaration of Chapin were submitted. It wasn't until 2000 that another letter was sent to Federal describing the deposition testimony. You know, the opposition makes a good point that, you know, this wasn't supplied to us, they say, until the actual transcripts, until the motion for summary judgment was filed. Actually, what was supplied was a letter describing the deposition testimony, putting Federal on notice of it. If Federal were interested in reading the actual transcripts, they could have requested it. That, Your Honor, is something, a point they make in their opposition. It's not a point I think the Court should consider in deciding this case because it's not part of the record below. If Federal had raised that point and said, hey, we never saw these transcripts until you filed your motion, we would have then supplied the Court with a letter. If we were to take judicial notice, what would be, what would we find out about the current state of these underlying complaints? Settled. Okay. Settled recently. And, Your Honor, you know, your question makes me, compels me to point out, though, that we cannot look at this from 2020 hindsight. No, you look from the time of tender. Exactly. From the time of tender, then from the time that they were supplied with extrinsic evidence. And did they have information on which plaintiffs could base a claim for bodily injury? Was there factual information? And the fact that this is a class action, brought as a class action, is really crucial on this bodily injury issue. Because we're not just talking about bodily injury suffered by the representative plaintiffs, but also by the represented class members. And so when these studies talk about children, you know, becoming hooked, or children developing gambling problems, they're describing class members. That's very important, I think, for this bodily injury issue. Your Honors, I would like to reserve some time. I have eight minutes left. I want to focus on, if you're through with questions on bodily injury, turn to Hogan and Geddes, and just urge the Court to What is your strongest case that the implication of children's addiction equals disease within the meaning of the policy? There's no case that addresses that point, Your Honor. It's a factual issue rather than a legal issue. And those facts have not been addressed in any case that we've seen. Well, coverage is essentially a legal issue, isn't it? It is, yes. But, I mean, there's a legal aspect to it, and there's a factual aspect to it. But taking the language of the class action complaint that refers, and you read the reference that you're depending on, to children being what? It didn't say addicted. What was the specific language? Children and teenagers were spending up to hundreds of dollars per, let's see, month. Per month on the habit. Per month on the habit. On the habit, okay. So the key word is habit. Yes. Does habit equal disease within the meaning of the coverage language of the policy here, as interpreted by any California case? And if not, what's the closest that you can point to that helps me, at least, deal with the legal issue here? Your Honor, that's a very good question. Unfortunately, I don't have an answer for you. That's not an issue that we've, I've not seen any cases addressing habit equaling disease, or really even addressing disease and the breadth of that term in a CGL policy. I would just say that, you know, the, this is all analysis we're doing in the context of a duty to defend issue, and that issue is, of course, governed and guided in analyzing the duty to defend by Gray v. Zarek, by Korsman and Montrose. I clearly understand that, but in the end, the question will be whether there was coverage, right? Whether the habit equals disease. Correct. All right, let's find you. Whether habit equals disease and whether the extrinsic evidence, which was provided to Federal in May of 1999, informed Federal and sort of shone a light on and fleshed out what is the allegation and the potential bodily injury claim that is contained in the complaint itself that was filed in 1996. So when we look at the policy, which we'll have to make a legal determination here, we say it says the occurrence is bodily injury, and then you look to bodily injury, and that's injury, sickness, or disease. So it's only disease that you're suggesting is covered by the complaint, that we're really trying to benchmark the complaint against the word disease. I'd say the word habit in the complaint is benchmarked against the word disease. All right. The extrinsic evidence, the declaration of plaintiff's expert in the underlying case, the two studies that were produced by plaintiffs, that implicates also the mental anguish and mental injury aspects of the definition of bodily injury in the umbrella policy. Which is in the umbrella policy. Yes. The definition of bodily injury under the umbrella policy is a bit wider than in the primary policy. All right. Okay. Do you want to reserve the remainder of your time? Yes, I will, Your Honor. Thank you. But they call it an umbrella policy. All right. Yes. Thank you. Good morning, and may it please the Court, Peter Abrahams for Federal Insurance Company. I think the principal issue raised in the briefs, namely whether or not there was an occurrence that is an accident, has already been decided by this Court in Chamberlain v. Allstate. And as the Court will recall, that was the case where the insured had a romantic relationship with the underlying plaintiff and intentionally terminated the relationship and then intentionally failed to give to his former girlfriend what she claimed was quasi community property. And she claimed that as a consequence of his intentional acts, she suffered emotional distress. And the insured in Chamberlain contended, well, that was an accident covered by the policy because I did not intend to cause her emotional distress, even if I intended all the acts that led up to the emotional distress. And this Court, quoting the California Court of Appeal decision in the Lucette Mutual v. Mendez case, stated that where the insured intended all the acts that resulted in the victim's injury, the event may not be deemed an accident merely because the insured did not intend to cause injury. That's also the holding of numerous California Court of Appeal opinions where the California Supreme Court has declined to grant review. So certainly the California Supreme Court has had ample opportunity, if it wanted to, to correct those Court of Appeal opinions. I take it your position is under the Court of Appeals cases that states the law of California. The upper deck is up. That's correct. But there's a contention that if the older Supreme Court cases deal with an unforeseen result, are applicable, there could be coverage. Well, if you read the I think for two reasons. Number one, I think the statements that upper deck is relying on in the Getty's and Hogan cases are dicta dicta. In other words, the statement that a consequence can be an accident in those cases are dicta, because in each case you had an unforeseen event or happening which then caused injury. So those cases actually are totally consistent with the cases that the later California Court of Appeal cases. And as I pointed out in our brief, the Hogan and Getty's cases from the California Supreme Court were decided under policies with somewhat different policy language, because the policy language in Hogan and Getty's stated that it provided coverage for damages caused by accident. Subsequently, the standard policy language has been changed and the policy language, you know, applied and interpreted by the California Court of Appeal decisions and by this court in Chamberlain versus all state, required that the damages be called caused by an accident. And the California Court of Appeal in the Shell Oil case, I think, has an excellent discussion of this issue because it points out that if something has to be caused by an accident, that is by an unforeseen, unintended happening, the injuries cannot be the cause of themselves, because logically a consequence cannot cause itself. You cannot say that an injury was caused by accident because the injury was unexpected. You have to have the event, the act that was that resulted in the injury to be unintended and unexpected by the insured. Is the difference in the language accident and accidental means, is that the difference? Or what was the policy language change in these standard policies? Well, in Hogan and Getty's, the coverage was for damages caused by accident. In 1966, the standard policy language was changed to basically provide that they provide coverage for damages, bodily injury or property damage caused by an occurrence. And then occurrence is defined as an accident. So that's the difference in the policy language. I think it's significant that none of the cases that I project cited, none of the California cases I project is cited, provide coverage where unexpected damage occurred from an intentional act. None of those cases held that that was caused by an accident. And I think this year, another panel of this court in Chamberlain versus Allstate clearly reached that result. And unless this court is willing to depart from Chamberlain versus Allstate, the judgment would have to be affirmed. Upper decks subsidiary argument that the injury was the mental distress caused by the development of a compulsive compulsive habit was the injury. And therefore, the development of the compulsive gambling habit was the accident and the injury was the subsequent emotional distress. I think parses tries to parse things too finely and it ignores its own evidence that it submitted in opposition to our motion for summary judgment, which described pathological gambling as itself a mental disorder. And so clearly the injury is the development of the pathological gambling disorder. That's the injury. And it was not caused by any unintended, unexpected act. All of the acts leading up to that injury were intended, namely packaging the trading cards, stating the odds of obtaining a valuable chase card on the cover of the decks of cards of marketing the cards. Every one of those was. It's always, you know, you get into something like this and it gets a little esoteric about a possible habit. But under this policy, as you read it, if the class action were a lawsuit against major distillers for selling liquor, which then leads, as we know, in many instances or can lead to alcoholism when you drink it, would that be a covered occurrence? Well, it depends what the damages claimed are and and how well the damages are claimed for bodily injury. Well, if if if there was a lawsuit, meritorious or not, against alcohol distillers stating that your product had caused bodily injury, then I don't I still think that there would not be an accident. There would not be an accident. OK, well, what if we changed it? What if it were a recall suit because of insurance premiums that rocketed up? So that's your that's your property damage. Now it gets to here. But the members of the class, like the members of the class here, also suffer personally as they've alleged that these might would would that be covered under your analysis? Why or why not? Well, I wouldn't. Well, I just want to make sure there's there's really two aspects to our position. There's two reasons why the summary judgment should be affirmed. Number one, there was no occurrence, no accident because all of the acts were intended. And so you don't even get to the issue of what damages were claimed. But if you get beyond that hurdle, which I don't think the court needs to, then you have to ask, did the lawsuits seek recovery of the nature and kind of loss that was covered by the policy, namely bodily injury or damage to tangible property? Why wouldn't you start there? Well, you can start either way. I mean, it's I'm happy to start wherever the court wants to start. But I think either way, you come to the conclusion that there was no potential for coverage and no duty to defend. Why don't you directly respond to Mr. Osborne's point that the reference to habit in the RICO complaint is sufficient to trigger. Duty to defend based on coverage on the theory that that is a disease. Well, for two reasons. Number one, there was no attempt to recover for any mental distress, mental injury for habit. The damages claimed were treble damages, cost attorney's fees, declaratory and injunctive relief. Restitution and disgorgement. None of those constitutes either bodily injury or property damage or even mental injury beyond that. Although the complaint alleges is a habit, but the evidence that was presented to try to establish that there was mental injury in this case required reference to the declarations and material from the American Psychiatric Association about a pathological gambling disorder. I think pathological gambling disorder, I assume, would be a mental injury. But that's not even mentioned in the complaint. I mean, all it says is that there's a habit. Well, I know, but under the insurance law, generally dealing with coverage, and at least I think under the 9th Circuit cases, aren't we in time to look at extrinsic evidence to determine the issue of coverage? It isn't that issue in matters of pathological injury sufficient to at least say bodily injury or disease? No, Your Honor. I don't believe that's the case. I mean, I think this case is distinguishable from some of the leading California Supreme Court decisions on duty to defend, such as Gray v. Zurich and Montrose v. Superior Court, which Upper Deck relies on, because in those cases, the underlying complaints clearly did seek recovery for damages covered by the policies, namely property damage, damage to tangible property. The issue was whether or not there was a potential that the claim for those covered damages could be based upon a covered basis, such as negligent conduct. And the California Supreme Court in those cases said that there was a potential, based on extrinsic evidence, that the underlying plaintiffs ultimately might recover under non-intentional basis for those covered damages. But the California cases are very clear that you have to distinguish between a complaint that seeks the nature and kind of loss, namely damages covered by the policy on uncovered theory, because the complaint might be amended to seek recovery on a covered theory, versus a complaint that doesn't even seek damages of the nature and kind that are covered by the policy. Counsel has not cited any case. What you're saying is you kind of look at the causation factor. And you have to have a causation factor which deals with a sudden occurrence or an accident. Well, I'm not talking about the damage issue. I mean, if we go back to the occurrence issue, there was no occurrence because all of the acts undisputably were intended. I don't think that upper debt denies that it intentionally started. Isn't there an aspect that they did not anticipate that there would be development of what we call a habit or addiction? That's that's the contention. And for purposes of this, this appeal, I'll assume that they didn't expect that. But the as this court stated in Chamberlain versus all state, the fact that the injury is not expected doesn't mean that there's an accident. The damages were caused by an accident. If all of the acts leading up to the injury were intended. It's only when you have an unexpected result. I think it's the Kwan case that talks about distinguishes between a driver who speeds intentionally but doesn't intend to hit another car. But nonetheless, accidentally strikes another car. In that case, the injuries would be caused by accident because you have an intervening unexpected act, namely the collision with the other car and the Kwan case. I believe it's a Kwan case distinguished. That's it. You're selling cars. Yes. And so many buys cars and becomes addicted. That's correct. That's both damaging both damages. And it's also an unforeseen incident. I don't want to use occurrence again. From the standpoint of the insurer, it may be your honor. But that's under the California cases. And that's correct. Your honor in California. Don't go that far. That's correct. Your honor. Nine circuit cases. Interpreting California law. Don't go that far. That's correct. And Chamber saying is the plaintiff wants to go further than a case law that's been presented to us. That's correct. Well, I think when you know what I understand the point for Upper Deck to be saying is that they've made there's some base allegations there on habit. And when you combine those with extrinsic evidence, you have the possibility of new causes of action supported by an allegation. So I would like you to respond to that allegation because what they're saying is, no, it hasn't been alleged yet. But when you take that plus extrinsic evidence, then the insurance company should be on notice of its duty to defend because of the potential coverage. Well, this case is like Gunder's, the Gunderson versus farmers case, Hurley versus State Farm case that are cited in our brief. There was there were extrinsic facts which indicated there might have been some covered damage in that case, tangible property damage. But in those cases, the complaint, particularly the Gunderson case, was a dispute over a boundary line and an easement. And the only relief sought was injunctive and declaratory relief. In fact, there were some facts out there that indicated that the insured may have been chopping down some trees, which would have constituted tangible property damage. But the California Court of Appeals said that the insurance company is not required to speculate as to unfled claims. And I think once again, this is distinguishable from, say, the seminal duty to defend case, which was the California Supreme Court's decision in Gray versus Zurich, where the policy insured against liability for bodily injury. And the insured was involved where he was sued for allegedly intentionally assaulting the third party claimant. And the policy had an exclusion for intentional acts, intentionally caused injury. And the California Supreme Court said nonetheless, there was a duty to defend because the lawsuit clearly alleged the nature and kind of damages, namely bodily injury that were provided by covered by the policy. So the insured had a reasonable expectation that when he was sued for covered damages, that he was entitled to an offense, particularly when it was entirely possible that although the complaint alleged an intentional assault, that ultimately by the time the case was tried, he ultimately might be found liable simply for negligence and perhaps using more force than a jury decided was reasonably required. But in that case, you had a claim for covered damages, clearly covered damages. So there wasn't which is entirely different than, say, the Gunderson case or the Hurley case or our case, where the underlying lawsuit is not seeking the nature and does not involve the nature and kind of risk, namely bodily or injury, bodily injury or property damage, which is covered by the policy in that case. And I think, as this court said in the micro tech case, that that was an advertising injury policy. And for whatever reason, there were clearly facts that would have supported a claim that would have been covered under the policies advertising injury clause. But the this court stated that for whatever reason, the underlying claimant decided not to assert such a claim. And whatever the reason, such a claim was not asserted and therefore there's no potential for coverage and no duty to defend. So your position is that these extrinsic facts that they can't support an independent claim, but they have to be tied back in to the nature of the claims originally made at the time of tender. You have. Yes. You have to look at whether the underlying lawsuit involves the nature and kind of risk covered by the policy. And even though there may be facts that the insurance company, based upon the complaint as pled, might give it a basis to deny coverage such as the intentional act exclusion in Gray versus Zurich. Nonetheless, if it involves the nature and kind of risk, then you look to extrinsic evidence. But what we have here, we have a policy that ensures against bodily injury or damage to tangible property. And what we have is a lawsuit for declaratory and injunctive relief and discouragement of profits, which is not the type of thing that's covered by your standard bodily injury, property damage policy. And since the complaint was never amended, there was no duty to defend. And I just want to make sure that I have two prongs and I can win on either of them. I don't think there was an accident because all of the acts leading up to the event were intentional. Even if there was a potential for or covered bodily injury, which I don't think there was. But since all of the acts leading up to the injury were intended, there's no potential for coverage for that reason. And there's also no potential for coverage because the lawsuit did not seek the nature and kind of loss covered by the policy. So on either of those two grounds, I think the summary judgment for federal has to be affirmed. I'm happy to answer any other questions. If I may have. No further questions. Thank you, counsel. Mr. Osborne, you have some reserve time. Your Honor, as Mr. Abrams said, there are two prongs here. With regard to the first prong, the bodily injury prong, which the Court, I know, is concerned about. Your Honor, I think when you look at the complaint, what you need, what one needs to do, what one should do, what the Court, what we urge the Court to do is you have to connect the dots. All right, this is a class action. There are members, large members of this represented class, children, teenagers, adults who buy these sports and entertainment trading cards, which contain the chase cards. There's the allegation of a habit, children and teenagers spending up to hundreds of dollars a month on the habit. And then there is a statement that one of the things that they're asking the Court to determine is whether Upper Deck's violation of statutory law prohibiting gambling caused injury. Does it limit what kind of injury it's talking about? It could. What about damages? There's no, in the prayer, there's no request for damages, presumably to deal with treating the bodily injury. Exactly, Your Honor, that's true. And what Mr. Abrams says and what the Court has read, of course, is also true, that in this case, the theories of liability pled in this case are not covered theories of liability. All right? But there are facts alleged in the complaint, which puts federal on notice that plaintiffs could, if they chose to, plead a claim for bodily injury. I mean, in the horse- Tell us what case, you know, I've read these California insurance cases till my eyes glaze over, of course. But what do you think is the best case on this issue of how far you have to go to connect the dots, as you say? What do you think is the best California case or two that we should read? Two from 1993, the Horace Mann decision and Montrose v. Superior Court. Read those again. Horace Mann and Montrose v. Superior Court. And there's a statement, and I believe both of those cases, where the Court says that the plaintiff in the underlying case is not the arbiter of coverage. Just because plaintiff chooses not to allege a covered cause of action, they might purposefully choose to plead around coverage. But if the facts alleged in the complaint or the facts contained in the extrinsic evidence show that plaintiff could bring a covered cause of action because the rules of amending pleadings, especially in federal court, are so liberal they can be amended at any time, then the insurance company has to consider that. And if there's any potential revealed by the factual allegations in the complaint or extrinsic evidence, any potential for coverage revealed by those two sources of information, the insurance company needs to defend. That's the reasonable- does not determine coverage. In those cases, you have to have an occurrence. And he's saying that under no way is there any occurrence, either pleaded or is there any occurrence, other than the habit or damages that's involved in this proceeding. And he's saying that you're asking for coverage beyond what is within the realm of what has been discussed in this California Supreme Court, for example, or any federal case. Right. Mr. Abrams and I agree that a bodily injury claim is not necessarily covered by a CGL policy or an umbrella policy unless it's caused by an occurrence. Occurrence equals accident. What does accident mean? It's not defined in the policy. The California Supreme Court in Geddes and Hogan, a 1959 decision, and then a 1970 decision 11 years later defined accident to include the unintended consequences of intentional conduct. So you're saying the statement of the law is wrong on the California Supreme Court, that if you have unforeseen consequences, that's an accident. Yes, Your Honor. And actually the Ninth Circuit in 2002 applied that same definition of accident in the Anthem case, which is cited and addressed in our brief. And finally, Your Honor, you know, there is a split of authority. There's the Resedquan line of cases. There's the Hogan-Geddes line of cases. And Mr. Abrams is depending upon the Resedquan. We don't think that applies. Even if it did, we still win, though, because the unintended event or unforeseen event here, when Upper Deck sells its trading cards, is that children become addicted to gambling, as alleged. That then results in mental anguish, mental anguish, mental injury, could, could potentially. So when you consider all this in the umbrella of potential for coverage, there's a potential evidence on the face of the complaint. Thank you, Mr. Osborne. Your time has expired. The case just argued will be submitted for decision.
judges: Pregerson, Fernandez, Berzon